**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ERIC JORDAN, | * | |
| *Petitioner*, | * | |
| v. | * | |
| | | Criminal Action No. RDB-11-0094 |
| UNITED STATES OF AMERICA, | * | Civil Action No. RDB-19-1922 |
| *Respondent.* | * | **\*UNDER SEAL\*** |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>**MEMORANDUM OPINION**</u>

Petitioner Eric Jordan ("Petitioner" or "Jordan") is serving a 432-month prison sentence[1] in connection with several commercial robberies that occurred in 2011.  (ECF No. 302; ECF No. 185 at 1; ECF No. 16.)  Jordan served as the getaway driver during three of these robberies and was found to have entered the premises during one of the robberies.  (ECF No. 301 *SEALED*.)  Jordan and his Co-Defendant, Aaron Graham ("Graham" or "Co-Defendant"), (collectively, "Defendants") were arrested on February 23, 2011.  (ECF No. 246 *SEALED* at 2.)  Jordan was ultimately charged in eleven of the seventeen Counts brought against Defendants in a Second Superseding Indictment filed May 18, 2011.  (ECF No. 16.)  Specifically, Jordan was indicted on two counts of felon in possession of a firearm in violation of 18 U.S.C. § 922(g) (Counts One, Two); one count of possession of an unregistered firearm in violation of 26 U.S.C. § 5861(c) (Count Three); five counts of Hobbs Act robbery or conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951 (Counts Four, Nine,

---

[1]  Jordan was initially sentenced to a mandatory 864-months of incarceration.  (ECF No. 185 at 1; ECF No. 246.)  On December 7, 2021, this Court by Memorandum Order granted Jordan's Motion for Compassionate Release (ECF No. 271) pursuant to 18 U.S.C. § 3852(c)(1)(A)(i) construed as a Motion for Sentence Reduction, and reduced his sentence to a term of 432 moths' incarceration, "consistent with the sentence he would receive today for the same offenses."  (ECF No. 302 at 3; ECF No. 301 *SEALED*, at 2, 15.)

Eleven, Thirteen, Sixteen); and three counts of brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) (Counts Ten, Twelve, Seventeen).  (ECF No. 16.) Jordan and Graham were convicted following a nine-day joint jury trial.  (ECF Nos. 116–120, 126, 129–132, 140.)

During Defendants' joint trial, this Court granted Jordan's motion for judgment of acquittal as to Count One against him, and the jury returned a guilty verdict as to all remaining Counts.  (ECF No. 130; ECF No. 140 *SEALED*; ECF No. 142; ECF No. 185.)  Several direct appeals and motions for collateral relief followed.  On June 28, 2019, Jordan's counsel timely filed on his behalf a Motion to Vacate or Correct Illegal Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 246 *SEALED*) ("Jordan's Motion" or "§ 2255 Motion"), which was subsequently stayed pending the outcome of possibly controlling cases.  (ECF Nos. 256, 321.) On December 7, 2021, this Court granted Jordan's *pro se* Motion for Compassionate Release (ECF No. 271) construed as a Motion for Sentence Reduction and reduced his sentence to 432 months, or 36 years, of incarceration.[2]  (ECF No. 301 *SEALED*.)  Jordan is presently incarcerated at the FCI Cumberland in Cumberland, Maryland, with an expected release date of March 7, 2042.  *See* FIND AN INMATE, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (search by register number: 53279-037).

Currently pending before this Court is Jordan's § 2255 Motion (ECF No. 246 *SEALED*) in which he raises, through counsel, seven arguments to vacate or correct his

---

[2]  On January 28, 2022, the Court issued an Amended Judgment as to Co-Defendant Aaron Graham in which it reduced Graham's original 1,764-month sentence to 684 months of incarceration based on retroactive amendments to the Sentencing Guidelines pursuant to 18 U.S.C. § 3582(c)(2).  (ECF Nos. 309, 310, 311, 312.) Graham remains incarcerated at FCI Gilmer in Glenville, West Virginia, with an expected release date of January 6, 2020.  *See* FIND AN INMATE, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (search by register number: 41535-037).

sentence. The Government has responded in Opposition (ECF Nos. 261; 263 *SEALED*; 317), and Jordan has replied (ECF Nos. 266; 267 *SEALED*). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons stated herein, Jordan's Motion (ECF No. 246 *SEALED*) is GRANTED IN PART and DENIED IN PART. Jordan's Motion is GRANTED as to Counts Two and Seventeen and DENIED as to his sentence under all other Counts. Specifically, Jordan's conviction under Count Seventeen, charging him with brandishing a firearm in violation of 18 U.S.C. § 924(c) is VACATED, and his sentence under Count Two, charging him with a violation of 18 U.S.C. § 922(g) must be CORRECTED.

## BACKGROUND

The facts of this case were summarized by the United States Court of Appeals for the Fourth Circuit in its opinion affirming the denial of Defendants' motion to suppress, *United States v. Graham*, 796 F.3d 332 (4th Cir. 2015), *aff'd en banc*, 824 F.3d 421 (4th Cir. 2016), and by this Court in its Memorandum Opinion granting Jordan's Motion for Reduction of Sentence, (ECF No. 301 *SEALED*). Petitioner Eric Jordan and Co-Defendant Aaron Graham were convicted of several offenses related to six armed robberies at various commercial premises in January and February 2011.[3] (ECF No. 301 *SEALED* at 2.) Jordan acted as the getaway driver in three of the robberies and entered the premises of one robbery at a Shell gas station where Graham's masked accomplice waived a sawed-off shotgun and

---

[3] The establishments robbed included: (1) a Dollar Tree store in Baltimore County, on January 17, 2011; (2) a Milan Gold & Diamonds store in Baltimore City on January 22, 2011; (3) a 7-Eleven in Baltimore City on January 22, 2011; (4) a Shell gas station in Baltimore County on February 1, 2011; (5) a Burger King in Baltimore City on February 5, 2011; and (6) a McDonald's restaurant two miles from the Burger King, also on February 5, 2011. *Graham*, 796 F.3d at 339 40; (ECF No. 301 *SEALED* at 2 n.2.)

assaulted an employee. (*Id.* *SEALED* at 3.) Jordan and Graham were arrested on February 5, 2011, after police stopped Jordan's vehicle shortly following the final robberies. (*Id.*); *Graham*, 796 F.3d at 340.

On May 18, 2011, the Government charged Jordan and Graham in a seventeen-Count Second Superseding Indictment. (ECF No. 246 *SEALED* at 1–3; ECF No. 16.) Jordan was indicted on two counts of felon in possession of a firearm in violation of 18 U.S.C. § 922(g) (Counts One, Two); possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d) (Count Three); three counts of brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) (Counts Ten, Twelve, Seventeen); and multiple counts of Hobbs Act robbery and conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951 (Counts Four, Nine, Eleven, Thirteen, Sixteen). (ECF No. 246 *SEALED* at 2–3; ECF No. 301 *SEALED* at 1.) Before trial, the parties litigated several motions to suppress identification, tangible evidence, cell phone data, and cell site data and Defendants' motions for severance, all of which this Court denied. (ECF No. 246 *SEALED* at 3.)

Jordan and Graham proceeded to a nine-day, joint jury trial in which Jordan was represented by court-appointed counsel pursuant to the Criminal Justice Act. (ECF No. 246 *SEALED* at 3.) During trial, Jordan testified in his own defense, and the Court granted his oral motion for judgment of acquittal as to the felon in possession charge in Count One. (ECF No. 246 *SEALED* at 2, 6; ECF No. 130.) The jury returned a verdict of guilty on all counts, and on October 12, 2012, this Court sentenced Jordan to 864-months' incarceration and Graham to 1,764-months' incarceration. (ECF No. 185.) In imposing Jordan's sentence, this Court emphasized the lack of discretion afforded by mandatory minimums and expressed a

preference for a sentence in the range of 40 to 45 years.  (ECF No. 301 *SEALED* at 4.)

After trial and sentencing, Jordan's case was subject to substantial appellate and collateral litigation.  Jordan and Graham directly appealed to the U.S. Court of Appeals for the Fourth Circuit, which affirmed their convictions on August 5, 2015.  *United States v. Graham*, 796 F.3d 332 (4th Cir. 2015) *rev'd on other grounds* 824 F.3d 421 (4th Cir. 2016) (en banc).  The initial three-judge panel of the Fourth Circuit concluded that the Government had violated both Defendants' Fourth Amendment rights by obtaining cell-site location information without a warrant but applied the good-faith exception to prevent exclusion of the evidence. (*Id.*)  On rehearing *en banc*, the Fourth Circuit reversed on the issue of the cell-site location data, holding that the trial court had correctly permitted the use of cell-site location data.[4]  824 F.3d 421 (4th Cir. 2016).  The Fourth Circuit also determined that this Court had abused its discretion in limiting Jordan's testimony, but counsel waived the issue by failing to note an objection, holding that Defendants' rights were not violated.[5]  (*Id.*)  Defendants' petitions to the U.S. Supreme Court for *writs of certiorari* were denied in 2018.  (ECF No. 246 *SEALED*); *Graham v. United States*, 585 U.S. 1029 (2018); *Jordan v. United States*, 585 U.S. 1035 (2018).

On June 28, 2019, Jordan's counsel timely filed the instant Motion to Vacate pursuant to 28 U.S.C. § 2255 ("Jordan's Motion" or "2255 Motion") (ECF No. 246 *SEALED*) on his behalf.[6]  On July 24, 2020, this Court granted the parties' consent Motion to Stay Jordan's

---

[4] Although the Fourth Circuit reversed its prior holding regarding the constitutionality of the cell-site location data obtained by police, the outcome remained the same for defendants, whose convictions were affirmed by both opinions.

[5] This holding was not appealed to the *en banc* panel.  *See United States v. Graham*, 824 F.3d 421, 424 (4th Cir. 2016) (en banc).

[6] Motions under 28 U.S.C.§ 2255 are subject to a one-year limitations period that runs from the latest of:
    (1) the date on which the judgment of conviction becomes final;

2255 Motion (ECF No. 254) pending the outcome of potentially controlling cases before the Supreme Court and U.S. Court of Appeals for the Fourth Circuit.  (ECF No. 256.)  In the interim, the parties briefed the issues unaffected by the appeals.  (ECF Nos. 261, 263 *SEALED* (Government Oppositions); ECF Nos. 266, 267 *SEALED* (Jordan's Replies).)  While his § 2255 Motion remained stayed, Jordan filed a *pro se* Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 271), which this Court granted by Memorandum Opinion dated December 7, 2021 (ECF No. 301 *SEALED*).  Accordingly, on December 7, 2021, this Court reduced Jordan's sentence from 864 months to 432 months, or 36 years of incarceration.[7]  (ECF Nos. 302, 303.)  Following the resolution of the potentially controlling cases, the Government entered an additional response in Opposition (ECF No. 317).  On September 27, 2022, upon Jordan's Motion (ECF No. 321) the Court again stayed Jordan's § 2255 Motion pending resolution of the possibly controlling case *United States v. Pyos*, Case No. 17-4269, 2022 WL 17592130 (4th Cir. Dec. 13, 2022), then pending before the Fourth Circuit.  (ECF No. 322.)  On May 5, 2023, Jordan's counsel filed correspondence indicating that he believed Jordan's Motion was finally ripe.  (ECF No. 325.)  On January 10,

---

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).  In this case, Jordan's judgment became final upon the denial of his petition for *writ of certiorari* on June 28, 2018.  *See Jordan v. United States*, 535 U.S. 1035 (2018).  He timely filed the instant Motion on June 28, 2019, within the one-year limitations period.  (ECF No. 246.)

[7]  On January 28, 2022, the Court issued an Amended Judgment as to Co-Defendant Aaron Graham in which it reduced Graham's original 1,764-month sentence to 684 months of incarceration based on retroactive amendments to the Sentencing Guidelines pursuant to 18 U.S.C. § 3582(c)(2).  (ECF Nos. 309, 310, 311, 312.)

2025, Jordan filed a *pro se* Writ of Mandamus with the U.S. Court of Appeals for the Fourth Circuit in connection with his pending 2255 Motion.  (ECF No. 339.)  This matter is now ripe for review.

## STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a prisoner in custody may seek to vacate, set aside or correct his sentence where: (1) "the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "the court was without jurisdiction to impose such sentence;" (3) "the sentence was in excess of the maximum authorized by law;" or (4) the sentence is "otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

It is well-settled that a § 2255 motion is not a means to circumvent a proper ruling on appeal.  *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013).  A § 2255 motion does not enable the defendant to "recast, under the guise of collateral attack, questions fully considered by [the Circuit Court on direct appeal]."  *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976).  Furthermore, as a general rule, "claims not raised on direct appeal may not be raised on collateral review."  *Massaro v. United States*, 538 U.S. 500, 504 (2003).  Thus, in a motion pursuant to § 2255, a petitioner may raise novel claims only where the petitioner demonstrates both "cause" and "actual prejudice."  *Bousley v. United States*, 523 U.S. 614, 622 (1998).

Conversely, any "failure to raise an ineffective-assistance-of-counsel claim on direct

appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro*, 538 U.S. at 509. An ineffective assistance of counsel claim requires that a petitioner satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 671 (1984). *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). The first, or "performance," prong of the test requires a showing that counsel's representation was deficient and fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In assessing whether counsel's performance was unconstitutionally deficient, courts adopt a "strong presumption" that counsel's actions fall within the "wide range of reasonable professional assistance." *Id.* at 688–89. Actions that fall below an objective standard of reasonableness are "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The second, or "prejudice," prong requires that defendant demonstrate that his counsel's errors deprived him of a fair trial. *Id.* To establish this level of prejudice, a petitioner must demonstrate that there is a "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Satisfying either of the two parts of the test alone is not sufficient. Rather, a petitioner must meet both prongs of the Strickland test to be entitled to relief. *See id.* at 687.

## ANALYSIS

Through his § 2255 Motion,[8] Jordan raises numerous arguments to vacate or modify his sentence. Jordan raises ineffective assistance of trial and appellate counsel claims and challenges his sentence as to his 18 U.S.C. § 924(c) convictions (Counts Ten, Twelve,

---

[8] Jordan is represented by counsel who filed the § 2255 Motion on his behalf.

Seventeen) and his 18 U.S.C. § 922(g) conviction (Count Two).  Specifically, Jordan argues that: (1) trial counsel was ineffective for failing to object to the Court's limitation of Jordan's testimony in his own defense; (2) trial counsel was constitutionally ineffective for failing to object to the Government's closing arguments; (3) under *Rosemond v. United States*, 572 U.S. 65 (2014), his convictions under 18 U.S.C. § 924(c) must be vacated because the conduct for which he was convicted is no longer a crime; (4) his § 924(c) convictions are no longer valid because the predicate offenses do not qualify as crimes of violence, and appellate counsel was ineffective for failing to timely raise this issue; (5) his classification as an armed career criminal must be reversed because the predicate convictions are no longer crimes of violence under 18 U.S.C. § 924(e), and appellate counsel was ineffective for failing to raise this issue; (6) his § 924(c) charges, as set forth in the indictment are duplicitous and it was ineffective assistance of trial and appellate counsel not to raise this issue; and (7) under *Rehaif v. United States*, 588 U.S. 225 (2019), his 18 U.S.C. § 922(g) convictions must be vacated because they were obtained without proof of an essential element.  (ECF No. 246 *SEALED* at 1–2.)  The Court addresses each claim in turn, grouping some claims together where appropriate.

      **I.**      ***Strickland* Claims as to Trial Counsel**

A freestanding ineffective assistance of counsel claim may be properly asserted for the first time in a § 2255 motion.  *United States v. DeFusco*, 949 F.2d 114, 120–21 (4th Cir. 1991). To set forth a Sixth Amendment claim for ineffective assistance of counsel, the petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires the petitioner to show: (1) "that counsel's performance was deficient;" and (2) "that the deficient performance prejudiced the defense."  *Id.* at 687.  In applying *Strickland*, it is

unnecessary to address both prongs if the petitioner makes "an insufficient showing on one." *Moore v. Hardee*, 723 F.3d 488, 500 (4th Cir. 2013) (quoting *Strickland*, 466 U.S. at 697). Thus, ineffective assistance of counsel claims may be denied solely on a deficiency in either the "performance" prong or the "prejudice" prong. *See Strickland*, 466 U.S. at 697. In this case, Jordan raises *Strickland* claims related to (1) trial counsel's failure to object to the trial court's limitation of Jordan's testimony in his own defense, and (2) trial counsel's failure to object to the Government's closing arguments. The Court addresses each claim in turn.

### A. Trial Counsel's Failure to Object to Limitations of Testimony

Jordan first argues that his trial counsel unreasonably failed to object to this Court's limitation of the scope of his testimony in his own defense. (ECF No. 246 *SEALED* at 7, 9.) Taken together, the Fifth and Sixth Amendments to the U.S. Constitution guarantee a federal criminal defendant's right to testify on his own behalf at trial. *United States v. Midgett*, 342 F.3d 321, 325 (4th Cir. 2003) (citing *Rock v. Arkansas*, 483 U.S. 44, 52 (1987)). This right is not unlimited, however, and the Supreme Court has held that a trial court may impose "reasonable restrictions" upon a defendant's testimony in his own defense to "accommodate other legitimate interest in the criminal trial process." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). Such interests include "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973). That is, a defendant's testimony is still subject to the Federal Rules of Evidence. *United States v. Graham*, 796 F.3d 332, 366 (4th Cir. 2015) *rev'd on other grounds* 824 F.3d 421 (4th Cir. 2016). A limitation on such grounds is unconstitutional only where it is arbitrary or disproportionate because it infringes upon an interest of significant

weight to the defendant.  *Rock*, 483 U.S. at 62, 56; *Scheffer*, 523 U.S. at 308.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████    Under Federal Rule of

Evidence "403, even relevant testimony by the defendant 'may be excluded if its probative

value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

misleading the jury,'" among other concerns.  *Graham*, 796 F.3d at 366 (quoting FED. R. EVID.

403); *see also Holmes v. South Carolina*, 547 U.S. 319, 326 (2006).  In this case, Jordan argues that

his trial counsel provided ineffective assistance by failing to object to numerous portions of

his testimony on direct and his testimony on rebuttal or redirect.[9]  Because the limitations on

Jordan's testimony were constitutional, Jordan cannot show deficient performance or

prejudice as required for a successful claim under *Strickland*.

###    i.    Testimony Excluded on Direct

Jordan argues that trial counsel provided ineffective assistance under *Strickland* by

failing to object to the following portions of testimony excluded during his direct examination

at trial: ████████████████████████████████████████████████

████████████████████████████████████████    ██████████████████████

---

[9] Jordan's § 2255 Motion is remarkably unclear about the precise testimony that he believes was improperly excluded.  Jordan mentions various portions of excluded testimony, but then groups the testimony according to direct and rebuttal testimony.  Petitioner bears the burden to demonstrate ineffective assistance by meeting both prongs of *Strickland*.  *Harrington v. Richter*, 562 U.S. 86, 104 (2011).  Thus, to the extent that Jordan sought to challenge testimony not directly addressed herein, the Court was unable to discern the specific testimony challenged.  Regardless, for the  reasons explained above, the limitations of the testimony were permissible and, even where the limitations exceeded the Court's discretion, Jordan has not shown prejudice as required under *Strickland*.

[10] Jordan mentions this excluded testimony once and does not provide further substantive argument regarding how counsel was ineffective for failing to object.  Because Jordan does provide substantive argument on this excluded testimony, he cannot meet his burden under *Strickland* on the basis of this testimony.  *See Harrington*,

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████ ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████ █████████████████████████████████

All of these challenges fail the prejudice prong of *Strickland*, which requires a petitioner to establish that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) (citing *Strickland*, 466 U.S. at 687). That is "[w]ith respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 694). The Fourth Circuit has recognized that "overwhelming evidence

---

562 U.S. at 104 (explaining person challenging performance of counsel bears burden to establish deficient performance and prejudice).

[11] Jordan mentions this excluded testimony but offers no substantive argument to explain how its exclusion was error or how his trial counsel's failure to object violated the highly deferential *Strickland* standard. Because it is Graham's burden to make a showing under *Strickland* and he failed to present any argument at all regarding this testimony, the Court determines that no ineffective assistance resulted from trial counsel's failure to object to this exclusion.

■ ██████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████

introduced at trial" may render it impossible for a petitioner to meet his burden to show a reasonable probability that the outcome would at trial would have been different absent counsel's error. *Waye v. Townley*, 871 F.2d 18, 20–21 (4th Cir. 1989); *see also United States v. Lomax*, Crim. No. WMN-10-0145, 2014 WL 1340065, at *2, *3 (D. Md. Apr. 2, 2014) (explaining that "overwhelming weight of other evidence" may "render[] it impossible for [a petitioner] to meet the *Strickland* prejudice prong"). ████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████

In light of the overwhelming other evidence against Jordan, however, he cannot meet his burden to show prejudice under *Strickland*. Specifically, the Government presented evidence that the weapons and clothing used in the Shell robbery were found in different locations inside Jordan's apartment, ████████████████████████ ████████████ (ECF No. 162 at 50, 54–57; ECF No. 165 at 38.) Similarly, the Government showed that Jordan discarded the jacket after his arrest, which suggests that he was aware of the significance of the jacket in demonstrating his involvement in the robberies, and he only could have known the significance of the jacket if he was involved in or aware of the robberies. (ECF No. 165 at 25, 27–29, 34–35; ECF No. 130 at 128–29.) Moreover, the Government presented cell-site location information that placed Jordan near the Shell station

minutes after the robbery occurred and established that he and Graham subsequently traveled near Jordan's apartment.  (ECF No. 165 at 172–73; ECF No. 166 at 18–35.)

The jury also received evidence that police spotted Graham's truck, which matched the description of the truck used in the McDonald's robbery, just five minutes and thirty seconds after the first 911 call related to the McDonald's robbery.  (ECF No. 165 at 88.)  At that time Jordan was driving the truck and Graham was a passenger wearing a jacket matching the description of the Burger King robber and carrying a pistol that matched the description of the gun used in the fast food robberies.  (ECF No. 162 at 29, 30–34.)  Jordan attempted to evade police by speeding away, and he did not comply with officers' commands.  (ECF No. 162 at 21, 25–26.)  Finally, Graham's pockets contained significant amounts of cash and the truck's center console was open and full of cash.  (ECF No. 162 at 31, 37–40.)

In sum, the jury heard testimony that (1) evidence matching the weapons and clothing used in the robberies was found inside Jordan's apartment; (2) Jordan was arrested in the car with Graham immediately after the fast-food robberies; (3) cell-site location information placed Jordan in the vicinity of the robberies; and (4) Jordan attempted to hide evidence (the jacket) and evade police when he was caught.  ██████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ █████████████████████████████████  In the face of such significant evidence of presence at the crimes, possession of items used in the crimes,

consciousness of guilt, ███ ████████████████████████████

████████████████████████████ Jordan has not met his burden to show a

reasonable probability that the trial would have ended differently—in a judgment of

acquittal—if he had been permitted to give the testimony excluded during his direct

examination.  Because these challenges fail the prejudice prong, the Court need not analyze

the performance prong under *Strickland*.

### ii.    Testimony Excluded on Redirect

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████ In Opposition, the Government argues that

Jordan cannot show prejudice based on the excluded drug testimony, and he cannot show

either prong of the *Strickland* analysis as to the remaining testimony excluded on redirect.

(ECF No. 263 *SEALED* at 20–25.)  The Court addresses first the excluded drug testimony

and then the remaining testimony.

### a)  Drug Testimony on Redirect

███████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ Trial counsel's failure to object to the exclusion of this testimony on redirect may have constituted deficient performance under *Strickland*.  That is, failing to make any objection to this exclusion may have been outside of the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. 688–89.

Even so, Jordan has not shown prejudice under *Strickland* because he has not shown that counsel's error deprived him of a fair trial. *Id.* at 694.  As explained above, such a showing requires a petitioner to demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*  In this case, the significant additional evidence against Jordan precludes such a showing.  At trial, jurors heard testimony that it took an officer, driving at high speed in a marked police vehicle

with its emergency lights activated, seven minutes to drive from McDonald's to Stricker Street to Monroe Street and Washington Boulevard. *See* (ECF No. 166 at 116–17.) ███████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Jurors also heard testimony that, mere minutes after the robberies occurred, police stopped Graham in the same truck from the robberies, wearing clothing and possessing a gun that matched the description of the clothing and gun used in the robberies, and with hundreds of dollars in cash on him. *See* (ECF No. 162 at 18–19; ECF No. 166 at 172–83; ECF No. 130 at 18–35.) ██████████████████████████████████████████

████████████████████████████████████████████████████

███████████    In the face of this significant contrary evidence, Jordan has not met his burden to demonstrate a reasonable probability that but for his counsel's failure to object, the outcome at trial would have been different.

Nor has Jordan shown that the outcome on appeal would have been different had his counsel objected. On direct appeal, properly preserved evidentiary ruling are reviewed for abuse of discretion and subjected to harmless error review. *See United States v. Lynn*, 592 F.3d 572, 576 (4th Cir. 2010); *United States v. Johnson*, 587 F.3d 625, 637 (4th Cir. 2009). An error is harmless when it is "highly probable that the error did not affect the judgment." *United States v. Nyman*, 649 F.2d 208, 212 (4th Cir. 1980). In light of the significant evidence discussed above—as well as further evidence adduced at trial that Jordan had weapons and clothing associated with the robbery at his apartment; the clothing he wore when arrested matched the robbery; the cell-site information placed his location near the robberies; he was with Graham

almost immediately after the final robbery; he had a gun and cash on him when stopped; among other evidence—Jordan has not shown that the outcome would have been different had his counsel objected.[13]

### b) Remaining Testimony on Redirect

---

[13] The Supreme Court has explained that showing the outcome would have been different is not alone sufficient to make a claim under *Strickland*. *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) (explaining in context of petitioner who showed outcome would have changed that "analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective"). Jordan presents no substantive argument on the fundamental fairness of the restriction regarding his drug testimony. Because Jordan has failed to make the required showing that the outcome of his trial would have been different, the Court does not reach the fundamental fairness inquiry.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████ Jordan offers no substantive argument to explain why the

district court's determination under the unfair prejudice balancing standard in Rule 403 was

improper such that it required objection from Jordan's defense counsel.  Jordan was not

charged with the jewelry store robbery and, ██████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████

        ████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

19

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████ It would also be reasonable for counsel to determine that an objection would be unsuccessful because the limitation was pursuant to a Federal Rule of Evidence, which still apply even to limitations of a defendant's testimony in his own defense.  As such, Jordan's counsel's failure to object to this exclusion was not an "error[] so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland*, 466 U.S. at 688.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████ As the Fourth Circuit has explained, trial courts must balance "admission of relevant evidence probative of a defendant's guilt or innocence" with "exclusion of prejudicial, misleading, and confusing evidence," *United States v. Lighty*, 616 F.3d 321, 358 (4th Cir. 2010), even when the evidence at issue is the defendant's testimony in his own defense, *Graham*, 796 F.3d at 366.  As discussed above, trial counsel's decision to object is trial strategy entitled to significant discretion.  *See, e.g.*, *Spicer v. Roxbury Correctional Inst.*, 194 F.3d 547, 562 (4th Cir. 1999) (explaining "highly deferential" review of trial counsel's performance (quoting *Wilson v. Greene*, 155 F.3d 396, 403 (4th Cir. 1998)).

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████  As such, trial

counsel's failure to object did not constitute deficient performance in violation of the Sixth

Amendment.

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████

████████████████████████████████████████████████████

Case 1:11-cr-00094-MJM     Document 340 *SEALED*     Filed 03/17/25     Page 22 of 48

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████ Because Jordan fails to meet the first prong of the

*Strickland* inquiry, the Court need not reach the second prong.[14]

---

[14] Even so, the Court notes that, in light of the overwhelming evidence discussed previously, Jordan cannot show prejudice based on any of the testimony excluded on redirect. Moreover, Jordan cannot show prejudice from counsel's failure to object to a restriction that did not exist ███████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████

### B.  Trial Counsel's Failure to Object During Closing Arguments

Jordan also argues that his trial counsel were ineffective because they failed to object to remarks the Prosecutor made in closing.  (ECF No. 246 *SEALED* at 20.)  Specifically, Jordan argues that trial counsel should have objected to remarks that (1) improperly accused Jordan of lying; (2) weighed the credibility of witnesses; and (3) criticized Jordan for exercising his right to testify in his own defense.  (*Id.*)  Jordan argues that the Prosecutor improperly opined on Jordan's credibility by stating that his testimony was "a complete and total fabrication," calling him "untruthful," and saying that, despite swearing an oath to be truthful, Jordan told "a story that is just as unbelievable as the story he told the Government many months ago."  (*Id.*)  Additionally, Jordan asserts that during rebuttal closing, the Prosecutor improperly opined on the credibility of witnesses by stating that law enforcement had done a "terrific job in this case." (*Id.*) ███████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████  As explained below, Jordan fails to demonstrate deficient performance and prejudice as required to establish a *Strickland* claim based on trial counsel's failure to object to these remarks.

As an initial matter, "prosecutors enjoy considerable latitude in presenting arguments to a jury because 'the adversary system permits the prosecutor to 'prosecute with earnestness and vigor.'" *Bates v. Lee*, 308 F.3d 411, 421 (4th Cir. 2002) (internal citation omitted) (quoting *United States v. Young*, 470 U.S. 1, 7 (1985)).  Thus, the Fourth Circuit has explained, "closing

argument is not merely a time for recitation of uncontroverted facts, but rather the prosecution may make fair inferences from the evidence." *United States v. Francisco*, 35 F.3d 116, 120 (4th Cir. 1994). "When a criminal defendant elects to testify, his lack of credibility and motive to fabricate are proper subjects for closing argument so long as the prosecutor does not inject his personal opinion of the defendant's lack of credibility." *United States v. Thornton*, 847 F.2d 1470 (table), 1988 WL 92903, at * 1 (4th Cir. Sept. 1, 1988) (per curiam) (first citing *United States v. Durrani*, 835 F.2d 410, 424 (2d Cir. 1987); and then citing *United States v. Carleo*, 576 F.2d 846, 852 (10th Cir. 1978), *cert. denied*, 439 U.S. 850 (1978)). In this case, Jordan elected to testify, and his testimony contradicted both his own prior statements and the evidence—including cell-site information data—presented during the trial. This presented a credibility issue central to the outcome of the case: the jury had to decide whether to believe Jordan's testimony or believe the Government's narrative of events as established from various inferences in the other evidence presented. Accordingly, it was permissible for the Prosecutor to discuss Jordan's lack of credibility in closing argument as long as the Prosecutor did not offer his personal opinion. *See Thornton*, 1988 WL 92903, at *1.

### i.    Comments on Jordan's Credibility

In this case, the Prosecutor permissibly discussed Jordan's lack of credibility by stating,

> [Jordan] gave you an explanation that I submit the evidence shows was a complete and total fabrication. It defied logic. It defied the evidence in this case. And it defied common sense. Just the bottom line, it defied common sense.

(Trial Tr. Vol. 9 (Apr. 27, 2012), at 15.) Similarly, the Prosecutor argued during closing that,

> [Jordan's testimony] didn't fit the evidence. Because we had cell phone records. And we had cell site data. All of which showed he was nowhere near his apartment in the minutes before the robbery. ████████████████

██████████████████████████████████

(*Id.* at 82.) Both of these statements constituted permissible attacks on Jordan's credibility. They did not present the Prosecutor's opinion but argued that the evidence contradicted Jordan's testimony in a manner that supported the common-sense inference that Jordan was not a credible witness. *See Francisco*, 35 F.3d at 120. This is permissible in the case against Jordan, which turned on whether the jury believed his version of events or the version the government presented via various pieces of evidence, including cell-site location data, other witnesses ████████████████████████ *Thornton*, 1988 WL 92903, at *1. Because these statements were permissible, trial counsel's failure to object to them cannot constitute deficient performance under *Strickland*.

### ii.    Comments on Law Enforcement in Rebuttal Closing

The Prosecutor's comments about law enforcement during rebuttal closing were likely objectionable, but Jordan has not shown that trial counsel's failure to object was so grave that it constituted deficient performance under *Strickland*. The Fifth Circuit has explained that whether police "did a good or bad job was not a prejudicially improper subject for passing comment during argument." *United States v. Montemayor*, 674 F.2d 1118, 1125 (5th Cir. 1982). In this case, however, the Prosecutor's suggestion that it was "virtually an insult" to criticize police impermissibly expressed the Prosecutor's opinion rather than serving as a discussion of the proficiency of the policework at issue. (ECF No. 211 at 92.)

Even so, numerous courts have concluded that failure to object to rebuttal argument during closing does not fall "outside the wide range of professionally competent assistance" as required to show deficient performance under *Strickland*. *See, e.g., Robles v. Baker*, 2022 WL

25

943073, at \*10 (D. Nev. Mar. 19, 2022); *Andriano*, 2021 WL 184546, at \*15 (D. Ariz. Jan. 19, 2021). As the Fourth Circuit has explained, deficient performance "is a highly deferential standard" because "different counsel, all competent, may approach trial problems in different ways. A challenged action is ineffective assistance only if it cannot be considered sound trial strategy under the wide range of reasonable professional conduct." *Watkins v. Angelone*, 133 F.3d 920 (table), 1998 WL 2861, at \*7 (4th Cir. Jan. 7, 1998) (first citing *Strickland*, 466 U.S. at 686, 689; and then citing *Arnold v. Evatt*, 113 F.3d 1352, 1363 (4th Cir. 1997)). In this case, it was reasonable trial strategy for Jordan's counsel not to object during the Prosecutor's rebuttal closing. Defense counsel may have recognized that they opened the door to comments about the investigation by commenting in their own closing that the Baltimore City Police Department had not analyzed all the evidence and suggesting, "whether or not the law enforcement professionals had made up their mind and just simply decided not to do it or it's oversight, that's their issue." (ECF No. 211 at 70–71.) As such, trial counsel may have reasonably concluded that it would be detrimental to Jordan's case to object when the prosecutor attempted to respond to their comments. Accordingly, Jordan has not shown that the failure to object was so mistaken that it fell outside the "wide range of reasonable professional conduct" at trial. *Angelone*, 1998 WL 2861, at \*7.

Moreover, Jordan cannot show prejudice due to his counsel's failure to object. The Fourth Circuit has recognized that curative instructions and overwhelming evidence of guilt may preclude any showing of the prejudice required for a successful *Strickland* claim. *See United States v. Martinovich*, 808 F. App'x 158, 161 (4th Cir. 2020) ("Moreover, [petitioner] has not shown how he was prejudiced by a single sentence tying the results to the investigation, in

26

light of the trial court's curative instruction and the overwhelming evidence against [him].").

In this case, the Prosecutor's single remark during rebuttal closing did not prejudice Jordan

because the Court provided curative instructions and the jury had overwhelming evidence of

Jordan's guilt. Specifically, the Court instructed the jury that (1) jurors were the "sole judges

of the credibility of each witness"; (2) what "the lawyers have said . . . in their closing arguments

today . . . is not evidence"; and (3) police officers were not "deserving of any more or less

consideration, or greater or lesser weight than that of an ordinary witness." (ECF No. 211 at

88, 101, 112.) Similarly, as discussed above, the jury received significant evidence supporting

Jordan's guilt, including: (1) cell-site location data placing Jordan near the Shell robbery and

between the fast-food robberies; (2) matching clothing that Jordan wore when he was arrested

and later discarded; (3) Jordan's arrest with Graham very shortly after the fast food robberies;

(4) the truck in which Jordan and Graham were stopped matched the description of the truck

from two robberies; (5) Jordan and Graham attempted to flee officers before the stop; (6) the

presence of a weapon under the passenger seat and cash in the open center console

immediately after a robbery; ███████████████████████████████████

███████████████████████████████ Taken together, the curative

instructions and significant other evidence of Jordan's guilt preclude the possibility of

prejudice based on his counsel's failure to object to the Prosecutor's closing statements.

### iii.    Comments on Jordan's Arrogance

The Prosecutor's comments during closing regarding Jordan's arrogance in testifying

were certainly objectionable, but Jordan cannot show that he was prejudiced by those

comments. *See, e.g.*, *Lesko v. Lehman*, 925 F.2d 1527, 1540 (3d Cir. 1991) (deeming prosecutor's

comments on defendant's arrogance impermissible).    As explained above, curative jury instructions and overwhelming evidence of guilt may preclude any showing of prejudice in the *Strickland* analysis.  *Martinovich*, 808 F. App'x at 161.  That is, where there is significant evidence against a defendant and the trial court provided curative jury instructions, a court cannot determine there is a "reasonable probability" that "but for" counsel's ineffective assistance, the outcome of the trial would have been different.  *Strickland*, 466 U.S. at 694; *see also Waye v. Townley*, 871 F.2d 18, 21 (4th Cir. 1989) ("In light of the overwhelming evidence introduced at trial concerning [petitioner's] intent, he cannot show that 'there is a reasonable probability that, but for counsel's unprofessional [error], the result of the proceeding would have been different.'" (quoting *Strickland*, 466 U.S. at 694) (alteration in original)).

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████    The cell-site location data also contradicted Jordan's testimony regarding his whereabouts during the period of the robberies.  ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████    The Court issued curative jury instructions that the jury must "evaluate the credibility of Mr. Jordan against the credibility of all other witnesses," jurors were the "sole judges of the credibility of each witness," and what "the lawyers have said . . . in their closing arguments today . . . is not evidence."  (ECF No. 211 at 96–97, 88, 101.)  The significant other evidence of Jordan's guilt and the curative instructions render Jordan unable to establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466

U.S. at 694.

## II.    Arguments Related to 18 U.S.C. § 924(c) Convictions

Next, Jordan raises numerous arguments challenging his convictions under 18 U.S.C. § 924(c) (Counts Ten, Twelve, Seventeen).  First, Jordan argues that based on *Rosemond v. United States*, 572 U.S. 65 (2014), which the Supreme Court decided during his direct appeal, the Government failed to show that he had the advanced knowledge that a co-conspirator would possess and use a weapon in commission of the robberies as required for conviction under § 924(c).  (ECF No. 246 *SEALED* at 23.)  Second, he argues that his § 924(c) convictions must be overturned because under recent Supreme Court precedents Hobbs Act robbery and Hobbs Act conspiracy are no longer crimes of violence sufficient to support conviction under § 924(c).  (ECF No. 246 *SEALED* at 27.)  Alternatively, he argues that it was ineffective assistance of appellate counsel that his counsel failed to timely raise this challenge during his direct appeal.  Finally, Jordan argues that his convictions under § 924(c) were duplicitous because they charged two distinct offenses in a single count of the Second Superseding Indictment.  Relatedly, he argues that it was ineffective assistance of trial and appellate counsel to fail to raise this issue during the trial stage or during his direct appeal. (ECF No. 246 *SEALED* at 44.)  For clarity, the Court reorganizes these arguments and addresses them in turn.

### A.  Advanced Knowledge Challenge Under *Rosemond*

In *Rosemond v. United States*, 572 U.S. 65 (2014), the Supreme Court held for the first time that aiding and abetting convictions under 18 U.S.C. § 924(c) require proof that a defendant had advanced knowledge that a firearm would be present for the underlying crimes.

572 U.S. at 80–82. *Rosemond* was issued after Jordan's trial but still applies to his case.[15] Jordan

contends that, after *Rosemond*, there was insufficient evidence to convict him under the § 924(c)

charges in Counts Ten, Twelve, and Seventeen because the Government did not present

evidence of his prior knowledge that a weapon would be used in the robberies, and the jury

was never instructed that it must find that he had such knowledge.[16]   (ECF No. 246

*SEALED* at 23–24.)   In Opposition, the Government argues that even if the jury instruction

was improper under *Rosemond*, Jordan's § 924(c) convictions are permissible based on

conspiracy under the *Pinkerton* doctrine, which "makes a person liable for substantive offenses

committed by a co-conspirator when their commission is reasonably foreseeable and in

furtherance of the conspiracy."[17]  *United States v. Ashley*, 606 F.3d 135, 142–43 (4th Cir. 2010);

*see also Pinkerton v. United States*, 328 U.S. 640, 646–47 (1946) (establishing *Pinkerton* liability);

---

[15]  Jordan's direct appeal was still pending when the Court issued *Rosemond*, so the holding of *Rosemond* is applicable to his case.  *See Teague v. Lane*, 489 U.S. 288, 299  310 (1989) (discussing application of new law to cases not yet final at the time the law issues and retroactive application to cases already final).

[16]  Jordan also argues, in the alternative, that it was ineffective assistance of appellate counsel to fail to raise the argument under *Rosemond* on direct appeal.  Because, as explained further below, the Court concludes that any error as to Counts 10 and 12 was harmless, Jordan's ineffective assistance of counsel claim must fail for failure to show prejudice as required under *Strickland*.  As to Count 17, as explained below, the Court concludes that error was not harmless, and that conviction must be vacated.  For this reason, the Court does not address Jordan's alternative ineffective assistance argument as under *Rosemond*.

[17]  Jordan argues that it is "disingenuous" for the Government to assert *Pinkerton* culpability in this case because such culpability would only apply if Jordan had been charged under 18 U.S.C. § 924(o), which he was not. (ECF No. 266 at 8.)  Rather, Jordan contends that the Government dropped the § 924(o) charges against him during or before the Rule 29 hearing in his case.  (*Id.*)  The trial transcripts reveal, however, that the Court instructed the jury on *Pinkerton* liability, stating: "If you find beyond a reasonable doubt that a defendant was a member of the conspiracy charged in the indictment, and any acts done in furtherance of the conspiracy by persons also found by you to have been members of that conspiracy may be considered against the defendant. This is so even if such acts were done in the defendant's absence and without his knowledge." (ECF No. 211 at 135  36; 136  38.)  Moreover, the Court noted to jurors the similarities between the aiding and abetting and conspiracy theories of culpability:  "I'm going to instruct you in aiding and abetting in the process of instructing you on conspiracy."  (*Id.* at 139.)  As the Fourth Circuit has recognized, "[j]urors are presumed to understand and follow instructions."  *United States v. Zelaya*, 908 F.3d 920, 930 (4th Cir. 2018) (citing *United States v. Tipton*, 90 F. 3d 861, 893 (4th Cir. 1996)).  For this reason, the Court presumes that the jury in Jordan's case followed the instructions it received.  That is, the Court presumed that because the jury received instructions on *both* conspiracy and aiding and abetting theories regarding the § 924(c) Counts, the jury could have convicted on either theory.

(ECF No. 263 *SEALED* at 28.)  As explained below, based on *Rosemond*, Jordan's conviction under Count Seventeen must be VACATED, but his convictions under Counts Ten and Twelve remain valid.

As an initial matter, the Court clarifies the criminal conduct and jury instructions at issue in Jordan's challenge under *Rosemond*.  The three § 924(c) aiding and abetting counts—Counts Ten, Twelve, and Seventeen—relate to three separate robberies.  Counts Ten and Twelve relate to the fast food robberies, which occurred at a McDonald's and a Burger King on February 5, 2011, and during which Jordan was the getaway driver.  (ECF No. 228 *SEALED* at 6–7; PSR ¶ 18–20; ECF No. 301 *SEALED* at 1.)  Count Seventeen relates to the Shell station robbery, which occurred on February 1, 2011, and in which Jordan entered the gas station during the robbery.  (ECF No. 84 at 2; PSR ¶ 15.)

At trial, the jury instruction given as to Counts Ten, Twelve, and Seventeen read: "With respect to aiding and abetting in this context, the government must prove that the defendant had knowledge or specific intent to advance the use of the firearm, or in other words, that he directly facilitated or encouraged the use or carrying of the weapon during the robberies." (ECF No. 211 at 154; *see also* ECF No. 211 at 139 (Court reading jury instructions: "Now, with respect to aiding and abetting that's charged in some of these substantive counts, I'm going to instruct you in aiding and abetting in the process of instructing you on conspiracy . . . Under the aiding and abetting statute, it is not necessary for the Government to show . . . .")  As Jordan notes, the aiding and abetting instruction did not comply with *Rosemond* because it did not instruct the jury that they must find Jordan had advanced knowledge of the use of a weapon.  The jury also received instructions regarding conspiracy liability under the *Pinkerton*

31

doctrine, which read: "If you find beyond a reasonable doubt that a defendant was a member of the conspiracy charged in the indictment, and any acts done in furtherance of the conspiracy by persons also found by you to have been members of that conspiracy may be considered against the defendant. This is so even if such acts were done in the defendant's absence and without his knowledge." (ECF No. 211 at 135–36; 136–38.) The jury verdict contains no discussion as to which theory—aiding and abetting or *Pinkerton* conspiracy—the jury used to convict the defendants as to any of the Counts.

"'If a jury was instructed on alternative theories of guilt and may have relied on an invalid one,' courts review for harmless error and determine whether the instructional flaw 'had a substantial and injurious effect or influence in determining the jury's verdict.'" *United States v. Franklin*, 709 F. App'x 202, 203 (4th Cir. 2018) (mem.) (quoting *Hedgpeth v. Pulido*, 555 U.S. 57, 58–59 (2008) (per curiam)); *see also Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). Where a trial court provided instructions on an aiding and abetting theory made improper under *Rosemond* and a *Pinkerton* theory of conviction under § 924(c), the Fourth Circuit has upheld the conviction where there existed sufficient evidence to convict under the *Pinkerton* theory. *See United States v. Hare*, 820 F.3d 93, 104–105 (4th Cir. 2016) (upholding conviction on plain error review based on sufficient evidence under *Pinkerton*). Similarly, the Fourth Circuit has concluded that circumstantial evidence may satisfy *Rosemond* where a defendant (1) was a getaway driver to an armed accomplice; (2) did not object or withdraw after observing a firearm in one robbery; and (3) possessed a firearm resembling that seen in surveillance footage of the robbery. *United States v. Moore*, 843 F. App'x 498, 502 (4th Cir. 2021). In this case, any error that occurred as to Counts Ten and Twelve was harmless because sufficient

evidence existed to support Jordan under the proper *Rosemond* theory—on which jurors were not instructed—*and* the *Pinkerton* theory on which jurors were instructed.  Under Count Seventeen, however, the error was not harmless because insufficient evidence existed to convict Jordan under either theory.

As to Counts Ten and Twelve, the error in the aiding and abetting instruction was harmless because the jury had overwhelming evidence to convict under the proper *Rosemond* instruction *and* the *Pinkerton* instruction.  An error is harmless unless it "had a substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619 (1993); *see also United States v. Smith*, 723 F.3d 510, 512 (4th Cir. 2013) (differentiating *Brecht* harmless error review applied in § 2255 cases from harmless error review applied on direct appeal, where error must be harmless *beyond a reasonable doubt*).  As the Supreme Court recognized in *Rosemond*, a factfinder may infer the requisite advanced knowledge "based on all the facts and circumstances of a crime's commission."  572 U.S. at 78 n.9.  Specifically, "if a defendant continues to participate in a crime after a gun was displayed or used by a confederate, the jury can permissibly infer from his failure to object or withdraw that he had such knowledge [of the use of a weapon]."  572 U.S. at 78 n.9; *see also Moore*, 843 F. App'x at 502 (continued participation after use of weapon in earlier robbery supported conviction under *Rosemond* despite improper instruction).  In this case, the robberies underlying the aiding and abetting charge in Counts Ten and Twelve occurred four days *after* the Shell station robbery in which Jordan entered the Shell station and one of the robbers threatened victims with the shotgun later found in Jordan's home.  Thus, Jordan knew that a shotgun was used in the Shell station robbery on February 1, 2011, but still participated in the fast food robberies four days

later. This provided the jury clear evidence from which to infer his advanced knowledge that a weapon would be used in the commission of the fast food robberies on February 5, 2011. *Rosemond*, 572 U.S. at 78 n.9. For the same reason, under a *Pinkerton* theory, the evidence makes clear that Jordan reasonably foresaw that his co-conspirator would use a firearm during and in furtherance of the fast food robberies on February 5, 2011.

As to Count Seventeen, however, the error was not harmless. The Government did not present evidence that Jordan knew *before* the Shell station robbery on February 1, 2011, that anyone would use a firearm during the robbery. Although the Government argues that Jordan entered the Shell station and participated in the robbery, there is no evidence of his advanced knowledge of the plan to use weapons during the robbery.[18] The Government argues that key pieces of evidence connected Jordan to the shell robbery: (1) officers found the shotgun wielded during the robbery in Jordan's apartment (along with another firearm and ammunition); (2) Jordan was wearing one of the Shell robbers' jackets at the time of his arrest; (3) Jordan discarded that jacket soon after his arrest, suggesting consciousness of guilty; (4) the historical cell-site data placed Jordan near the scene of the Shell robbery. (ECF No. 263 *SEALED* at 29.) None of this evidence establishes that Jordan knew that a weapon would

---

[18] The Government, *see* (ECF No. 263 *SEALED* at 29), the Fourth Circuit Opinion (ECF No. 227 *SEALED* at 6, ), and this Court's prior opinion, *see* (ECF No. 301 *SEALED* at 3, 3 n.3, 14 n.12), provide that circumstantial evidence establishes that Jordan entered the cashier booth during Shell station robbery. The Court cannot discern from the verdict form or trial transcripts, however, any evidence that Jordan himself wielded a weapon during the Shell station robbery or any evidence of prior discussions of a plan to use weapons during the Shell station robbery. Thus, the evidence does not establish whether Jordan would have known of the use of weapons *before* the Shell station robbery on February 1, 2011. With the exception of the conspiracy charge in Count Four, Jordan was not charged for any conduct before February 1, 2011. (ECF No. 16.) Even in the conspiracy charge of the Second Superseding Indictment (ECF No. 16), Jordan is only mentioned in reference to conduct beginning February 1, 2011. (ECF No. 16 at 4 8.) Therefore, even though Graham is charged with using weapons during the January robberies, there is no evidence that connects Jordan to those robberies or establishes his awareness of the use of weapons during those robberies.

be used before the commission of the crime as required for *Rosemond* liability.  The fact that the shotgun, ammunition, and another weapon were in his apartment after the crime cannot indicate whether it was foreseeable before the crime that a weapon would be used.  The same is true for the clothing found and discarded at the time of his arrest and thereafter.  The cell-site location data placing Jordan near the crime does not make the use of a weapon any more or less foreseeable.

Moreover, the evidence does not clearly establish that it would have been reasonably foreseeable to Jordan that a co-conspirators would use weapons during the Shell station robbery on February 1, 2011.  The Fourth Circuit has required more direct evidence of foreseeability to sustain a conviction under *Pinkerton*.  *See United States v. Hare*, 820 F.3d 93, 105 (4th Cir. 2016) (affirming, on plain error review, conviction under *Pinkerton* where "[a]t each meeting, [defendants] discussed the firearms the crew would bring and the possibility of shooting the stash house guards").  In this case, the evidence the Government offered was circumstantial evidence connecting Jordan to the crime after the fact, but no clear evidence establishing that he knew of the use of weapons before the crime.  The evidence that Jordan was physically present at the Shell robbery—the fact that he was wearing one of the Shell robbers' jackets at the time of his arrest and later discarded it and the fact that he cell-site information placed him *near* the scene of the robbery—is not overwhelming enough to establish that he would have reasonably foreseen the use of a weapon before the robbery occurred.  Moreover, the Supreme Court has held that "a verdict [must] be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury is selected," *Yates v. United States*, 354 U.S. 298, 312 (1957) *overruled*

*on other grounds Burks v. United States*, 437 U.S. 1 (1978). In this case, the limitations of the evidence establishing *Pinkerton* liability under Count Seventeen suggests that the error in the aiding and abetting instruction was not harmless because the jury may not have convicted as to Count Seventeen. For this reason, Jordan's conviction under Count Seventeen must be VACATED.

### B.  Challenge to Predicate Offenses Supporting § 924(c) Convictions

Under the Hobbs Act, it is "a federal crime to commit, attempt to commit, or conspire to commit a robbery with an interstate component." *United States v. Taylor*, 596 U.S. 845, 848 (2022). Conviction under 18 U.S.C. § 924(c) "authorizes further punishments for those who use a firearm in connection with a 'crime of violence.'" *Id.* Jordan argues that neither Hobbs Act conspiracy nor Hobbs Act robbery are crimes of violence that can support conviction under § 924(c). Accordingly, he argues that his convictions under Counts Ten and Twelve must be vacated.[19] This argument fails because the verdict form establishes that the predicate offense was Hobbs Act robbery, and the Fourth Circuit has explicitly concluded that Hobbs Act robbery is a crime of violence under § 924(c).

Jordan first challenges which predicate offenses support his convictions in Counts Ten and Twelve. (ECF No. 246 *SEALED* at 27–29.) He argues that the Superseding Indictment and jury instructions offered predicate offenses of either Hobbs Act Robbery (as charged in Counts Nine and Eleven) *or* Hobbs Act conspiracy (as charged in Count Four). As the Fourth

---

[19] Because the Court has already concluded that the conviction in Count 17 must be VACATED, the Court does not address Jordan's arguments as to Count 17. The Court notes, however, that the arguments would be identical because Count 17 also was charged as "brandishing a firearm in furtherance of a crime of violence, specifically Hobbs Act Robbery as charged in Count Sixteen." (ECF No. 139 at 5.)

Circuit has explained, however, "[s]pecial verdicts obviate this problem by allowing a court to determine upon what factual and legal basis the jury decided a given question." *United States v. Najjar*, 300 F.3d 466, 480 n.3 (4th Cir. 2002). In this case, the jury verdict makes clear that Jordan was convicted of the § 924(c) offenses in Counts Ten and Twelve based on Hobbs Act Robbery. The guilty verdict as to Count Ten convicted Jordan of "brandishing a firearm in furtherance of a crime of violence, specifically Hobbs Act Robbery as charged in Count Nine," and Count Nine charged "interference with commerce by Hobbs Act Robbery on February 5, 2011, at the Washington Boulevard Burger King restaurant." (ECF No. 140 at 3.) The guilty verdict as to Count Twelve convicted Jordan of "brandishing a firearm in furtherance of a crime of violence, specifically Hobbs Act Robbery as charged in Count Eleven," and Count Eleven charged Jordan with "interference with commerce by Hobbs Act Robbery on February 5, 2011, at the Frederick Avenue McDonald's restaurant." (*Id.* at 4.) Consistent with the plain language of the jury verdict, the predicate offense at issue in Jordan's challenge to his convictions in Counts Ten and Twelve was Hobbs Act Robbery.

A "§ 924(c) conviction based on one valid and one invalid predicate offense remains sound" if the valid predicate was the "factual and legal basis of the conviction." *Untied States v. Crawley*, 2 F.4th 257, 263 (4th Cir. 2021). As explained above, the verdict form in Jordan's case made clear that Hobbs Act Robbery was the "factual and legal basis of the conviction[s]" in Counts Ten and Twelve. *Id.* at 263; (ECF No. 139 at 3, 4.) The Fourth Circuit has explicitly concluded that "Hobbs Act robbery constitutes a crime of violence under the force clause of Section 924(c)." *United States v. Mathis*, 932 F.3d 242, 266 (4th Cir. 2019). Accordingly,

Jordan's challenge to the predicate offenses supporting his § 924(c) convictions must fail.[20]

### C. Ineffective Assistance of Trial and Appellate Counsel Based on Failure to Raise Duplicitous Convictions in Counts Ten, Twelve, Seventeen

"An indictment is duplicitous if it charges two offenses in one count, creating the risk that a jury divided on two different outcomes could nonetheless convict for the improperly fused double count." *United States v. Robinson*, 855 F.3d 265, 269 (4th Cir. 2017) (citations and internal quotation marks omitted). "Where an indictment or information contains a duplicitous count, the proper remedy is to dismiss the count or to require the United states to elect which offense it desires to pursue." *United States v. Pleasant*, 125 F. Supp. 2d 173, 176 (E.D. Va. 2000). The Supreme Court has recognized that a court cannot merely amend an indictment itself because a defendant enjoys "[t]he right to have the grand jury make the charge on its own judgment." *Stirone v. United States*, 361 U.S. 212, 218–19 (1960). In this case, the Second Superseding Indictment (ECF No. 16) and jury instructions were duplicitous because they charged predicate offenses of *both* substantive Hobbs Act robbery and conspiracy to commit robbery under the Hobbs Act. *See* (ECF No. 246 *SEALED* at 44.)

As discussed above, a *Strickland* counsel claim requires a showing of deficient performance *and* prejudice by a showing of a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States*

---

[20] Because the Fourth Circuit has explicitly determined that Hobbes Act Robbery is a valid predicate offense under the force clause, Jordan would be unable to show prejudice as required to support his alternative ineffective assistance of appellate counsel argument as to the predicate offenses. That is, even assuming his appellate counsel's performance was deficient   which is not at all clear given that appellate counsel raised this argument on direct appeal   the outcome of his appeal would not have changed because Hobbs Act Robbery remains a valid predicate offense. *See United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015) (requiring "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" to show prejudice).

*v. Rangel*, 781 F.3d 736, 741 (4th Cir. 2015). Even assuming that Jordan's trial and appellate

counsels' performances were deficient for failure to challenge the duplicitous Counts in the

Second Superseding Indictment, Jordan cannot show prejudice as required under *Strickland*.

Where a count is "duplicitous, this defect is easily cured through appropriate jury instructions

and/or a special verdict form." *United States v. Jiang*, 2025 WL 419531, at \*10 (E.D. Va. Feb.

6, 2025) (citing *United States v. Robinson*, 627 F.3d 941, 958 (4th Cir. 2010)). In this case, the

special verdict form cured any duplicity because it made clear that the convictions were based

solely on the underlying offenses of substantive Hobbs Act robbery. (ECF No. 139.)

Moreover, the jury confirmed on the record that the conviction was based on only one

predicate offense when the foreperson orally affirmed to the clerk the guilty verdict for each

defendant on each Count.[21] (ECF No. 196 at 19.) Thus, there is no divided jury concern and

no prejudice to Jordan.[22]

### III.    *Rehaif* § 922(g) argument

Jordan contends that under *Rehaif v. United States*, 588 U.S. 225 (2019), his 18 U.S.C. §

---

[21] From the perspective of Jordan's appellate counsel, therefore, there was no objection to raise because the special verdict form ameliorated the duplicity concern. Even if his appellate counsel had objected, there is no reasonable probability that his appeal would have resulted in a different outcome because the special verdict form had already addressed the duplicity concern. The special verdict form also ameliorates any ineffective assistance of counsel claim as to Jordan's trial counsel. Even assuming deficient performance, Jordan cannot show prejudice. The trial court would not have dismissed these three counts but would likely have required the Government to obtain another superseding indictment if it wished to proceed on those charges. *See, e.g.,* *United States v. Jackson*, 926 F. Supp. 2d 691, 706 (E.D.N.C. 2013) (recognizing outright dismissal based on duplicitous counts is disfavored). Moreover, if trial counsel objected before trial, any dismissal would have been without prejudice and the Government would have obtained another superseding indictment. If trial counsel objected to the jury instruction, the Court would have required the parties to cure the duplicity in the jury instruction itself. *See United States v. Jiang*, 2025 WL 419531, at \*10 (E.D. Va. Feb. 6, 2025) (citing *United States v. Robinson*, 627 F.3d 941, 958 (4th Cir. 2010)). The special verdict form ultimately cured the duplicity, so no prejudice resulted from trial counsel's failure to object.

[22] Jordan's argument as to the duplicitous indictment appear to rest entirely on the divided jury concern. *See* (ECF No. 246 at 44 45). The verdict form in this case entirely ameliorates this concern by explicitly providing that the predicate offense is substantive Hobbs Act robbery as charged in the appropriate cross-referenced counts. (ECF No. 139.) For this reason, Jordan has not shown prejudice under *Strickland*.

922(g) convictions must be vacated because they were obtained without proof of an essential element, which was an illegal miscarriage of justice.  (ECF No. 246 *SEALED* at 46.)  In *Rehaif*, which applies retroactively to cases on a first § 2255 motion, the Supreme Court imposed a new element for 18 U.S.C. § 922(g)(1) offenses by requiring that the government prove the defendant *knew* he had been convicted of a prior felony.  *Id.* at 237.  To succeed in a § 2255 challenge under *Rehaif*, a petitioner must establish a reasonable probability that the outcome of his case would have been different if the knowledge-of-conviction element had been required.  *Greer v. United States*, 593 U.S. 503, 508 (2021); *see also United States v. Waters*, 64 F.4th 199, 204–05 (4th Cir. 2023).  As Judge Chasanow of this Court has explained, "[i]n the § 2255 context, this means that [a p]etitioner must demonstrate 'actual prejudice'" to succeed on a *Rehaif* claim."  *United States v. Branch*, Crim. No. DKC-18-0212, 2022 WL 971007, at *1 (D. Md. Mar. 31, 2022); *see also Heard v. United States*, Crim. No. JRR-19-0090, 2024 WL 3638021, at *3 (D. Md. Aug. 2, 2024) (collecting cases and noting inconsistency in standard of review—plain error or harmless error—of *Rehaif* claims but explaining that both require showing of prejudice).  Jordan cannot meet this showing.

The Supreme Court has recognized that "[i]f a person is a felon, he ordinarily knows he is a felon."  *Greer*, 593 U.S. at 508.  As such, "prior convictions are substantial evidence that [felon-in-possession defendants] knew they were felons."  *Id.* at 509.  Commonsense further dictates that an individual with a significant criminal history including multiple prison sentences of more than one year "faces an uphill climb" to try to establish actual prejudice based failure to demonstrate the *Rehaif* knowledge element.  *Id.* at 508.  In this case, Jordan had four prior felony convictions for crimes of violence—assault, assault with intent to rob,

and two convictions for robbery with a deadly weapon—and had received state prison sentences of five years' imprisonment, fifteen years' imprisonment, and, again, fifteen years' imprisonment. (PSR ¶¶ 82, 84(A), 86, 92, 97.) At his sentencing, he had a criminal history category of VI. (PSR ¶ 107.) On these facts, Jordan cannot establish a reasonable probability that he was actually prejudiced by the Government's failure to establish knowledge of felon status as required under *Rehaif*. *See, e.g.*, *Branch*, 2022 WL 971007, at *2 (holding prior robbery, firearm possession, and CDS possession convictions resulting in sentences ranging from five to twelve years and criminal history category of VI precluded showing of actual prejudice); *United States v. Plater*, Crim. No. PJM-13-0622, 2022 WL 912396, at *3 (D. Md. Mar. 29, 2022) (noting criminal history precluded showing of actual prejudice); *Heard*, 2024 WL 3638021, at *4 (holding petitioner "cannot reasonably argue that he was unaware of his felon status" where he was on probation at the time and had an extensive criminal history including prior imprisonment of more than one year). There is ample evidence of Jordan's knowledge of his status as a felon at the time of the crimes in this case, and his *Rehaif* argument thus fails.

## IV.     Armed Career Criminal Designation

Generally, a conviction under 18 U.S.C. § 922(g) carries a maximum penalty of ten years' incarceration. *Id.* § 922(g)(a)(2). Under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), however, an armed career criminal—that is, a person "who violates 18 U.S.C. § 922(g) and has three previous convictions for 'a violent felony or a serious drug offense, or both, committed on occasions different from one another'"—is subject to a mandatory period of imprisonment of not less than fifteen years. *United States v. Redd*, 85 F.4th 153, 161 (4th Cir. 2023) (quoting 18 U.S.C. § 924(e)(1)). In *Johnson v. United States* (*Johnson II*), 576 U.S. 591 (2015),

the United States Supreme Court held that the "Residual Clause" of the Armed Career Criminal Act's definition of "violent felony" was unconstitutionally vague because its application was too "wide-ranging" and "indeterminate." *Johnson II*, 576 U.S. at 596–97. After *Johnson II*, an offense can only qualify as a "violent felony" under the ACCA if it falls within the ambit of the "Force Clause" or is one of the ACCA's enumerated offenses.

In this case, Jordan was classified as an armed career criminal subject to the fifteen-year sentencing enhancement under Count Two, violation of 18 U.S.C. § 922(g), based on four prior state convictions: (1) a Maryland assault conviction; (2) a Maryland assault with intent to rob conviction; and (3) two prior Maryland assault with a deadly weapon convictions. *See* (PSR ¶ 82: *see also id.* ¶¶ 86, 89, 90, 92, 97); (ECF Nos. 185, 186.) In his § 2255 Motion, Jordan challenges his classification as an armed career criminal and argues that his appellate counsel was ineffective for failing to raise this challenge on direct appeal.[23] (ECF No. 246 *SEALED* at 35.) The Fourth Circuit has held that Maryland robbery with a dangerous or deadly weapon is a violent felony under the ACCA's force clause, *United States v. Bell*, 901 F.3d 455, 472 (4th Cir. 2018), and Jordan challenges only his predicate Maryland conviction for common law assault with intent to rob.[24] (ECF No. 246 *SEALED* at 235.) Jordan asserts that this crime can occur with no force or with only *de minimis* force such that it cannot support an armed career criminal designation. (ECF No. 246 *SEALED* at 35.) In Opposition, the

---

[23] The Court concludes that Jordan's substantive challenge requires adjustment of his sentence and does not reach his ineffective assistance challenge.

[24] Jordan originally challenged both his Maryland common law assault with intent to rob and his Maryland common law assault convictions. The Government concedes, however, that the Fourth Circuit has held that Maryland common law assault is not a violent felony under the force clause. *See United States v. Royal*, 731 F.3d 333, 342 (4th Cir. 2013). Thus, it is undisputed that his Maryland common law assault conviction cannot support his armed career criminal status.

Government asserts that Jordan's two convictions for Maryland assault with a deadly weapon and his conviction for Maryland assault with intent to rob constitute crimes of violence such that he has three violent felony convictions to support his armed career criminal designation. (ECF No. 263 *SEALED* at 32–33.)  For the reasons explained below, Jordan's Maryland common law assault with intent to rob convictions are not violent felonies within the ACCA's force clause.  As such, he lacks the requisite three prior violent felony convictions to categorize him as an armed career criminal, and his sentencing enhancement under Count Two must be CORRECTED.

At bottom, the parties dispute only whether conviction for Maryland assault with intent to rob constitutes a crime of violence under 18 U.S.C. § 924(e).  Under the Armed Career Criminal Act ("ACCA"), a "violent felony" is "'any crime punishable by imprisonment for a term exceeding one year' that (1) 'has as an element the use, attempted use, or threatened use of physical force against the person of another' (the 'force clause'); (2) 'is burglary, arson, or extortion, [or] involves the use of explosives (the 'enumerated-offenses clause'); or (3) 'otherwise involves conduct that presents a serious potential risk of physical injury to another' (the 'residual clause')."  *United States v. Redd*, 85 F.4th 153, 161 (4th Cir. 2023) (quoting 18 U.S.C. § 924(e)(2)(B)).  In *Johnson II*, 576 U.S. 591 (2015), the Supreme Court held that the residual clause of the ACCA was unconstitutionally vague.  *Id.* at 606.  Thus, Jordan's Maryland common law assault with intent to rob conviction can only support his ACCA sentencing enhancement if it is as a crime of violence under the force clause.

As the Supreme Court has explained, "in the context of a statutory definition of '*violent* felony,' the phrase 'physical force' means *violent* force."  *United States v. Johnson (Johnson I)*, 559

U.S. 133, 140 (2010). "Violent force is 'force capable of causing physical pain or injury to the other person." *United States v. Proctor*, 28 F.4th 538, 544 (4th Cir. 2022). As such, de minimis physical force, including "mere offensive touching" does not constitute violent force under the ACCA. *Id.* (quoting *United States v. Middleton*, 883 F.3d 485, 489 (4th Cir. 2018)). To determine whether a state crime constitutes a violent felony under the ACCA, the Fourth Circuit applies a categorical approach. *United States v. Burns-Johnson*, 864 F.3d 313, 316 (4th Cir. 2017). That categorical approach usually contains two stages: first, the court applies state law to determine the force needed to commit the state crime; second, the court applies federal law to determine if such minimum conduct satisfies the ACCA's force clause. *Proctor*, 28 F.4th at 545 (citing *Johnson I*, 559 U.S. at 138).

In the first stage, courts "examine only the elements of the state offense and the fact of conviction, not the defendant's conduct." *United States v. Doctor*, 842 F.3d 306, 308 (4th Cir. 2016). After determining the elements of the state offense, courts analyze state-court decisions to determine the "'most innocent conduct' that the law criminalizes." *Proctor*, 28 F.4th at 545 (quoting *United States v. Middleton*, 883 F.3d 485, 488–89 (4th Cir. 2018)). Based on the most innocent criminalized conduct, the court evaluates whether there exists a "realistic, not [just] theoretical possibility,' that a state would actually punish that conduct." *Id.* (quoting *United States v. Doctor*, 842 F.3d 306, 308–09 (4th Cir. 2016)). In the second stage, courts apply federal law to determine whether the minimum conduct criminalized meets the definition of "violent force" under the ACCA's force clause. *Id.*; *see also Doctor*, 842 F.3d at 308–09. If such minimum conduct "does not involve the use, attempted use, or threatened use of violent physical force against another, then the offense is not categorically a 'violent felony' under the

44

[ACCA's] force clause, and it is thus not an [ACCA] predicate under that clause." *United States v. Jones*, 914 F.3d 893, 901 (4th Cir. 2019).

In the context of Maryland assault with intent crimes, however, the Fourth Circuit has instructed that this analysis should proceed in three steps: (1) look to the least culpable conduct encompassed within the assault element of the crime; (2) evaluate whether the mens rea element—in Jordan's case, intent to rob—"circumscribes the reach of the [crime] such that it only punishes physically violent conduct;" and (3) determine whether there is a "'realistic probability' that Maryland would have punished the minimally culpable conduct that can satisfy both the assault and intent elements." *Proctor*, 28 F.4th at 545–46, 548. Applying this framework to Jordan's case, Maryland common law assault with intent to rob does not meet the definition of "violent felony" under the ACCA.

First, the elements of Maryland common law assault with intent to rob are (1) an assault on the victim; (2) made by the defendant; (3) with the intention to commit robbery. *Bryant v. State*, 4 Md. App. 572, 578 (1967). The Fourth Circuit has already determined that the least culpable conduct encompassed within Maryland assault lacks sufficient force to qualify as a violent crime under the ACCA. *Proctor*, 28 F.4th at 547; *see also United States v. Royal*, 731 F.3d 333, 342 (4th Cir. 2013). Thus, the assault element of Maryland assault with intent to rob cannot support designation as an armed career criminal under the ACCA's force clause.

The second step presents a much more complex question. The Fourth Circuit has concluded that Maryland robbery is a violent crime under the ACCA's force clause because "[t]he offense requires more than nominal contact." *United States v. Johnson*, 945 F.3d 174, 181 (4th Cir. 2019). The Fourth Circuit has expressed, however, that "intent to commit" a violent

45

crime is not necessarily sufficient to meet the "violent force" requirement of the ACCA's force clause. *United States v. Al-Muwwakkil*, 983 F.3d 748, 763 (4th Cir. 2020). In analyzing whether Virginia burglary with intent to commit murder satisfied the force clause, the Fourth Circuit concluded that neither Virginia burglary nor Virginia intent to commit a particular offense—in that case, murder—satisfied the force clause. *Id.* Specifically, the Fourth Circuit explained that "[a]lthough Virginia law requires the Government to prove the defendant's specific intent to commit a particular offense (here, murder), circumstantial evidence can satisfy that burden" such that no use of force is necessary to satisfy the "intent to commit murder" element. *Id.*

Applying the same logic to Maryland common law assault with intent to rob, the "intent to rob" element does not require evidence of actual force. The Supreme Court of Maryland has explained that "[s]ince intent is subjective and, without the cooperation of the accused, cannot be directly and objectively proven, its presence must be shown by established facts which permit a proper inference of its existence." *Davis v. State*, 102 A.2d 816, 819 (1954) (analyzing assault with intent to murder). For this reason, Maryland's highest court has determined that circumstantial evidence alone is sufficient to sustain an assault with intent to rob conviction. *See Dixon v. State*, 488 A.2d 962, 966 (Md. 1985) ("The testimony of the cashier, the attitude of the accused, the demanding note, and the reasonable inferences deducible therefrom were found by the trial court to show an intent to rob. We cannot say that its conclusion was clearly erroneous."); *Williams v. State*, 164 A.2d 467 (Md. 1960) (affirming assault with intent to rob conviction on sufficiency of evidence of arrest made at the scene, victim screaming for help, defendants being found together near the scene, and defendants had hastily returned items to victim); *Coles v. State*, 821 A.2d 389, 396–99 (Md. 2003) (discussing

46

evidence needed to prove assault with intent to rob and standard to find such intent). As in *Al-Muwwakkil*, Maryland courts have determined that specific intent to rob may be established by circumstantial evidence such that "a conviction for [Maryland assault with intent to rob] does not necessarily involve the use of force." 983 F.3d at 764. Because neither assault nor assault with intent to rob alone involve violent, physical force, Maryland assault with intent to rob cannot satisfy the ACCA's force clause.

Accordingly, at the time of his sentencing in this case Jordan only had two prior convictions—both for robbery with a deadly weapon—that qualified as violent felonies under the ACCA's force clause. This rendered him ineligible for the ACCA's sentencing enhancement, which requires three prior violent felony convictions. As such, his fifteen-year sentence as to the § 922(g) crime in Count Two exceeded the ordinary statutory maximum sentence of ten years' incarceration. 18 U.S.C. § 924(a)(2). Accordingly, Jordan's sentence as to Count Two must be CORRECTED.

## CONCLUSION

For the foregoing reasons, Petitioner's § 2255 Motion (ECF No. 246 *SEALED*) is GRANTED IN PART and DENIED IN PART. Specifically, the Motion is GRANTED as to his sentence under Count Two and his conviction under Count Seventeen. His conviction under Count Seventeen is VACATED, and his sentence under Count Two must be CORRECTED. The Motion is DENIED as to all remaining Counts and arguments.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the Court is required to issue or deny a Certificate of Appealability when it enters a final order adverse to the applicant. *See Jackson v. United States*, No. PJM-12-421, 2012 WL 869080, at *1

(D. Md. Mar. 13, 2012).  "A Certificate of Appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). Where the court denies petitioner's motion on its merits, the petitioner "'must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003) (quoting *Barefoot v. Estelle*, 463, U.S. 880, 893 n.4 (1983)).  Because Jordan's Motion provides no basis for issuance of a Certificate of Appealability, a Certificate of Appealability is DENIED.

A separate Order follows.


Dated: March 17th, 2025

/s/
_____
Richard D. Bennett
United States Senior District Judge